UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| S.L., a minor, by next friend RON LENDERMAN, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 4:10-CV-2163 (CEJ) |
| ST. LOUIS METROPOLITAN POLICE DEPARTMENT BOARD OF COMMISSIONERS, et al., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on three motions for summary judgment: (1) a joint motion filed by defendants St. Louis Metropolitan Police Department Board of Police Commissioners ("Board"),[1] Chief Daniel Isom, Colonel Reggie Harris, and Lieutenant Colonel Antoinette Filla; (2) a motion filed by Sergeant Lathan Isshawn-O'Quinn; and (3) a *pro se* motion filed by defendant Henrietta Arnold, formerly a St. Louis City police lieutenant. Plaintiff S.L. has filed responses in opposition to the motions and the issues are fully briefed.[2]

On July 3, 2010, defendants Arnold and Susie Lorthridge, a St. Louis City police officer, arrested 17-year-old S.L. at Arnold's home in St. Louis County on a charge of trespassing. In this action filed pursuant to 42 U.S.C. § 1983, plaintiff alleges that she was unlawfully arrested on false charges and that a false police report was created to justify the arrest. She also alleges that the Board of Police Commissioners is

---

[1]At all relevant times, the members of the Board were defendants Bettye Battle-Turner, Richard Gray, Michael Gerdine, and Mayor Francis Slay.

[2]The remaining defendant, Susie Lorthridge, did not enter an appearance or file an answer in this matter and default judgment has been entered against her.

deliberately indifferent to widespread unconstitutional conduct and, along with high-ranking police officials, failed to adequately supervise the individual officers involved in her arrest. She also asserts state-law claims for false imprisonment and battery against Arnold and Lorthridge.

## I. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

-2-

## II.    Background[3]

### A.    The July 3, 2010 Arrest

Plaintiff S.L. was involved in a relationship with Jonathan Arnold, the 18-year-old son of defendant Arnold.  On July 3, 2010, Jonathan lived with his mother in a subdivision on Lookaway Court.  The Arnold home straddles the boundary between St. Louis City and St. Louis County, but is deemed to be in the County.  Board Hrg. Tr. at 102-03 [Doc. # 109-1].  An undeveloped parcel owned by Riverway Development, LLC, is immediately next to the Arnold home within the St. Louis City limits.

Defendant Arnold held the rank of lieutenant in the St. Louis Metropolitan Police Department (SLMPD) and was a watch commander in the 8th District.  On July 3, 2010, she was on limited administrative duty.  Defendant Lorthridge was a police officer assigned to the 8th District.  At some point on July 3, 2010, Arnold took Lorthridge "out of service," ostensibly to drive her home so she could retrieve medication.

After a night out with friends, plaintiff and Jonathan went to his house, arriving there around 7:00 a.m.  Plaintiff testified that she was asleep in Jonathan's room when defendant Arnold arrived home a few hours later.  Plaintiff testified that Arnold became irate upon finding plaintiff in Jonathan's room.  During a previous visit to the Arnold residence, plaintiff heard Arnold say that she did not want Jonathan bringing girls home. Plaintiff and Jonathan began making phone calls in order to find someone to

---

[3]The record in this case includes evidence presented in administrative proceedings against defendants Arnold and Isshawn-O'Quinn, in addition to discovery completed in connection with this litigation.  The record also includes transcripts of interviews conducted by the police department's Internal Affairs Division (IAD). Defendants object on hearsay grounds to the admission of the transcripts of the three interviews IAD conducted with Lorthridge.  This objection will be discussed below.

give plaintiff a ride home. When plaintiff finally reached someone, she told Arnold that she would wait for her ride outside.

Plaintiff stated that she was attempting to leave the house when she encountered Lorthridge, who told her to wait on the porch. Id. at 35. Lorthridge asked plaintiff for her parents' phone numbers, but no one answered any of the calls Lorthridge placed. Id. at 38-40. Lorthridge accused plaintiff of making up false numbers and placed plaintiff in handcuffs.[4] According to plaintiff, Arnold expressed doubts about arresting her but Lorthridge reassured her that plaintiff was in the wrong because she was trespassing. Id. at 42.

Arnold's testimony about the events leading to the arrest differed significantly from plaintiff's. Arnold testified that she first saw plaintiff outside her house talking to Lorthridge. According to Arnold, Lorthridge stated that plaintiff had been seen trespassing on nearby property after being warned several times to stay away. Arnold testified that it was Lorthridge's decision to arrest plaintiff. Id. at 22-24, 28-30, 35.

Lorthridge and Arnold transported plaintiff to the North Patrol Division. Plaintiff testified that on the way to the police station Arnold yelled at her and called her a "white bitch" and said that if it had been "up to her . . . she would have slit my throat already." S.L. Dep. at 119-20 [Doc. #115-44]. Plaintiff also testified that during the transport Arnold called someone on her cell phone and said, "Me and Lorthridge are on our way there. We have . . . a problem, but when we get there, we'll talk to you about it." Id. at 120. Plaintiff was later transported downtown to the St. Louis Justice

---

[4]Lorthridge told investigators that while she and plaintiff were on the porch, she could hear Arnold in the house yelling and cursing at Jonathan and losing control. Lorthridge stated that she felt pressured to do something to defuse an escalating situation, so she arrested plaintiff for trespassing. Dec. 3, 2010 Administrative Reports Transmittal Sheet [Doc. #115-24].

Center, where she was booked and searched. Id. at 135-36. She was released later that day with a summons to appear in St. Louis City municipal court on a trespassing charge.

Sergeant Jason Albers was Lorthridge's immediate supervisor. He testified that, on July 3, 2010, Arnold told him that she was having Lorthridge drive her home. Board Hrg. Tr., pp. 193-94 [Doc. #106-2]. He first learned of plaintiff's arrest when he heard over the radio that Lorthridge was on her way to the station with an arrest. Id. at 191. He encountered Arnold shortly after she and Lorthridge arrived at the station. Albers testified that Arnold told him "basically . . . Susie had a trespassing arrest and at that time that's all I really needed to know." Id. at 192. He subsequently refused to sign a summons when Lorthridge presented it to him. Id. at 194.

### B.    Post-Arrest Reports

As the arresting officer, Lorthridge was responsible for the completion of several documents following plaintiff's arrest.[5] Arnold gave Lorthridge the name and address of the company (Riverway Development) that owned the property where the trespass allegedly occurred and the name of the contact person to include in the reports. See Board Hrg. Tr. 33-34. Arnold denied that she told Lorthridge to keep her name out of the incident report. Id. at 34.

Within 48 hours of an arrest, the arresting officer is required to submit an "incident" or "arrest" report using the "I/Leads" computer program. See Isshawn-O'Quinn Dep. at 14 [Doc. #106-6]. Any sergeant or watch commander can approve the incident report. Id. at 15. Lorthridge submitted a report for approval on July 4,

---

[5]These documents include a Field Booking Form [Doc. #106-10]; an Arrest Register [Doc. #106-11]; a City Court Summons [Doc. #106-12]; and an Incident Report [Doc. #106-8].

2010 at 2:30 p.m. Approval History for I/Leads Case # 10-03247 [Doc. #106-9].
Sergeant Gary Stittum rejected it without comment on July 5, 2010, at 7:49 a.m. Id.

Defendant Isshawn-O'Quinn began his assignment to the 8th District on July 5,
2010, two days after plaintiff's arrest. Isshawn-O'Quinn Dep. at 25. Lorthridge
approached him as he arrived at the station and told him that she needed approval for
an incident report. Id. at 35. Several hours later, the report was submitted for review
by Isshawn-O'Quinn, who initially rejected it. In rejecting the report Isshawn-O'Quinn,
cited several deficiencies: The report was submitted in the name of a department clerk
instead of the police officer who prepared it, and there was no verification of the
neighborhood or the district where the incident occurred. Also, an arrest was made
which normally means that there was an "assisting officer" involved. The report,
however, did not identify an assisting officer. Isshawn-O'Quinn directed Lorthridge to
correct the report.

When Lorthridge resubmitted the report, Isshawn-O'Quinn rejected it a second
time after finding more deficiencies. Among other things, the report again did not
identify the assisting officer. When Isshawn-O'Quinn questioned Lorthridge about this,
she told him that Arnold was with her at the occurrence but did not participate as an
assisting officer. Lorthridge submitted the report again and it was rejected a third time
by Isshawn-O'Quinn. Although the report stated that Lorthridge had been instructed
to perform an assignment outside of her district, it did not identify the person who
issued the directive. Also, the report stated that S.L. had been told by the property
owner to stay away, but it did not identify the person who had given the prior "no
trespassing" warnings.

-6-

Lorthridge made further revisions to the report, and in one of them she listed Arnold as the assisting officer. Isshawn-O'Quinn told Lorthridge that Arnold was on limited duty status and, as such, she could not act as an assisting officer. Isshawn-O'Quinn told Lorthridge that "it was advisable that she remove[d]" Arnold's name as assisting officer. IAD Hrg. Tr., p. 307 [Doc. #106-3].

The incident report was finally approved by Isshawn-O'Quinn on July 6, 2010. The version that was approved did not identify an assisting officer. Also, the final report contained numerous false statements. For example, when the I/Leads system would not accept the fictitious address Lorthridge entered, she changed the location of the incident to an intersection within the city limits. In addition, Lorthridge falsely identified Riverway Development, LLC as the victim of the trespassing offense and Richard Delaney as a witness to the offense.

### C.    Internal Investigation

Richard Swiderski was the captain of the 8th District in July 2010. On July 8, 2010, he learned of a rumor that Arnold had arrested her son's girlfriend for trespassing several days earlier. Swiderski Dep. at 9-11 [Doc. #109-13]. Swiderski was told that Lorthridge was involved and the two officers had effected the arrest outside of their district. When he read the incident report, Swiderski noted that there was no mention of Arnold being present at the scene of the arrest, either as an assisting officer or as a witness. Swiderski believed that the incident had been falsely reported and decided to prepare a memorandum recommending a confidential IAD investigation. Id. at 22. Swiderski could have prepared an Employee Misconduct Report instead, but he chose not to because he was concerned that it would notify Lorthridge and Arnold of the investigation. Id. at 23, 25-26, 37. Swiderski thought a

-7-

confidential investigation was appropriate because it would allow Lorthridge and S.L. to talk to IAD without risk of intimidation. Id. at 36-37.

The memorandum was submitted to Swiderski's supervisor who would in turn forward it to defendant Filla. Id. at 25. Several days after he submitted the memorandum, Swiderski's recommendation for a confidential investigation was overruled by Filla. According to Swiderski, Filla told him, "in essence . . . 'If there's enough information to prepare an allegation [of employee misconduct], then prepare it; otherwise, basically, leave it alone.'" Id. at 26, 36. Consequently, on July 13, 2010, Swiderski prepared an "Allegation of Employee Misconduct Report" [Doc. 109-20] and told Arnold that he had done so. Swiderski Dep. at 39-40.

The IAD investigation was conducted by Sergeants Pierre Benoist and Stan Mierzejewski. Board Hrg. Tr. at 77-79 [Doc. #109-1]. They conducted interviews with plaintiff on August 11, 2010, and with Arnold on August 30 and October 14, 2010. Id. at 52, 79.[6] Arnold made several statements that were later determined to be untrue. For example, she told the investigators that S.L. was not involved with her son and that the arrest occurred in the vacant lot adjacent to her home. She denied ordering or participating in S.L.'s arrest and stated that she had not sworn at S.L. [Doc. # 109-5, at p. 25]. She also stated that she had not viewed the incident report Lorthridge submitted, but the I/Leads history showed that she viewed the report on August 17, 2010. Board Hrg. Tr. at 82-84 [Doc. #109-1].

### D.   The September 7, 2010 Assault

_____

[6]Lorthridge was interviewed on August 17, September 1, and October 6, 2010. The transcripts of the interviews are found at Docs. ##115-39 to 115-40.

About a month after the arrest, plaintiff learned that she was pregnant with Jonathan's child.  S.L. Dep., pp. 37-38 [Doc. #115-44].  On September 7, 2010, Jonathan was with plaintiff at her parents' home.  They argued throughout the day because he wanted her to change her story about where she was arrested so that his mother would not lose her job.  S.L. Dep. at 147; Ronald Lenderman Dep. at 96 [Doc. #115-53].  The conflict became physical when Jonathan choked plaintiff and threw her to the ground.  When plaintiff called the police, Jonathan ran from the house.  S.L. Dep. at 150-54 [Doc. #115-44].  Plaintiff initially lied to the police about what had precipitated the fight.  She testified that she was afraid to state "the real reason" in case it "got back to" his mother and made the situation worse.  Id. at 154-55.

### E.  **Disciplinary Proceedings**

On March 25, 2011, a Metropolitan Police Department Summary Hearing Board found that Isshawn-O'Quinn committed two violations of Police Manual Rule 7, Section 7.004 (C-12), for "failing to properly exercise the duties and functions associated" with his rank or position.  St. Louis Met. Pol. Dept. v. Isshawn-O'Quinn, IAD No. 10/135, Findings of Fact and Conclusions of Law at 5 [Doc. #106-14].  In particular, Isshawn-O'Quinn was faulted for failing to inquire further into Arnold's role in the arrest.  Had he done so, the hearing board found, he could have learned that the arrest occurred in Arnold's home in St. Louis County and that S.L. was the girlfriend of Arnold's son.  Id. at 2.  He received a one-day suspension and a written reprimand.

On December 7, 2010, Arnold was suspended from duty, without pay, on a charge of false reporting.  Arnold Employee Record [Doc. #109-21].  Charges and Specifications were filed against her on December 14, 2010.  See FFCL at 2.  Hearings were conducted on August 8, 9, and 29, 2011.  Id. at 1. On November 1, 2011, a

Hearing Officer for the Board sustained all five charges against Arnold, finding that: (1) Arnold participated with Lorthridge in the arrest of S.L. without probable cause; (2) she created or caused to be created an incident report containing nine false statements; (3) she altered the location of the arrest in order to present it as occurring within the jurisdiction of the SLMPD; (4) she brought discredit to the department; and (5) she made false statements to IAD.  Her employment was terminated.  Lorthridge resigned from the police department.

Additional facts will be included as necessary in the discussion below.

III.   **Discussion**

A.   **Official Capacity Claims**

Plaintiff brings this action against defendants Harris, Arnold, Lorthridge and Isshawn-O'Quinn in both their official and individual capacities.  Individual-capacity suits seek to impose personal liability upon a government official for actions he or she takes under color of state law.  Kentucky v. Graham, 473 U.S. 159, 165 (1985). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent."  Id. (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978)).  An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  Id. at 166.  The entity can be liable "if one of its customs or policies caused the violation of [plaintiff's] rights."  Rynders v. Williams, 650 F.3d 1188, 1195 (8th Cir. 2011) (citation omitted) (district court erred in granting official summary judgment on official capacity claim without a full consideration of whether official set policy). "Although rare, a public official's single incident of unconstitutional activity can establish the requisite policy if the decision is 'taken by the highest officials responsible

-10-

for setting policy in that area of the government's business.'" Id. (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)). In this case, there is no evidence that defendants Arnold, Lorthridge, or Isshawn-O'Quinn were responsible for setting policy. Therefore, the official-capacity claims against them will be dismissed.

Defendants Filla, Harris, and Isom assert that they are state officials and thus are entitled to Eleventh Amendment immunity to the extent they are being sued in their official capacities. "The sovereign immunity enjoyed by states and recognized in the Eleventh Amendment bars private parties from bringing actions for damages against unconsenting states in federal courts." Thomas v. Saint Louis Bd. of Police Comm'rs, 447 F.3d 1082, 1084 (8th Cir. 2006) (citations omitted). While Eleventh Amendment immunity "extends to states and 'arms' of the state," it does not extend to local governments. Id. Thus, to the extent that Filla, Harris and Isom claim to be employees of the City, they are not entitled to Eleventh Amendment immunity. If, instead, they claim to be employees of the Board of Police Commissioners, their assertion of Eleventh Amendment immunity fares no better: the Board has been determined not to be an arm of the state and thus the Commissioners, and their employees, are not entitled to immunity under the Eleventh Amendment. Auer v. Robbins, 519 U.S. 452, 460 (1997) ("The Board of Police Commissioners . . . does not share the immunity of the State of Missouri"); see also Thomas v. St. Louis Bd. of Police Comm'rs, 447 F.3d 1082 (8th Cir. 2006) (reversing dismissal of claims against Board on basis of Eleventh Amendment immunity); Johnson v. Board of Police Comm'rs, 370 F. Supp. 2d 892, 898 n.4 (E.D. Mo. 2005) (St. Louis City Police Commander not entitled to Eleventh Amendment immunity because the Board is not entitled to immunity).

-11-

## B.    Plaintiff's Fourth Amendment Claim

Plaintiff claims that defendants Arnold and Lorthridge arrested her without probable cause and unlawfully caused her to be detained and searched at the Justice Center.  She claims that, by approving the false incident report, defendant Isshawn-O'Quinn participated in the unlawful arrest.

The Fourth Amendment provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause . . . ."  There is no dispute that plaintiff was "seized" for Fourth Amendment purposes when she was involuntarily taken to the police station.  Dunaway v. New York, 442 U.S. 200, 207 (1979).  There is also no dispute that Lorthridge and Arnold would have been justified in arresting S.L. if they had probable cause to believe she was committing an offense.  See Beck v. State of Ohio, 379 U.S. 89, 91 (1964) (whether arrest is constitutionally valid depends on whether, "at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.") (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949) and Henry v. United States, 361 U.S. 98, 102 (1959)).

In this case, a reasonable jury could believe from the evidence that S.L. was arrested solely because of the personal animus of Arnold, not because the facts and circumstances known to them at the time would have led a reasonable person to believe that plaintiff was involved in criminal activity.  See Beck, *supra.*  Thus, plaintiff's Fourth Amendment claim against Arnold withstands summary judgment.   It is

-12-

undisputed, however, that Isshawn-O'Quinn was not present at the scene of plaintiff's arrest and did not learn of the arrest until two days later when he reported to the 8th District. "A seizure is a single act, and not a continuous fact." Thompson v. Whitman, 85 U.S. 457, 471 (1873). Even if, as plaintiff alleges, Isshawn-O'Quinn knowingly approved a false incident report in order to conceal an unlawful arrest, the Fourth Amendment violation was already concluded by that point.

    In her opposition to summary judgment, plaintiff argues that Isshawn-O'Quinn's approval of the arrest report on July 5, 2010 was the proximate cause of her beating by Jonathan in September 2010. Plaintiff reasons that the false report allowed Arnold and Lorthridge "to evade swift punishment that would have deterred any effort to tamper with IAD's investigation." Setting aside the uncertain legal theory for such a claim, plaintiff completely ignores the evidence that, by July 13, 2010, Arnold was under investigation on suspicion of submitting a false report. Thus, there is no basis for concluding that Isshawn-O'Quinn's actions caused the delay in meting out "swift punishment" or otherwise played any role in Jonathan's subsequent conduct. Plaintiff cannot establish that defendant Isshawn-O'Quinn participated in her unlawful arrest and detention and he is entitled to summary judgment on the claim in Count I.

### C.    Conspiracy

    Plaintiff alleges that Arnold, Lorthridge, Isshawn-O'Quinn, and Harris conspired to cover up her wrongful arrest by submitting a false incident report and interfering with the IAD investigation. Harris was the Commander of the Bureau of Professional Standards, which oversees the Internal Affairs Division. Reggie Harris Dep. at 8 [Doc. #109-17]. He received oral reports regarding IAD's investigation into this incident. Id. at 33-34. There is evidence that Arnold considered Harris her mentor and relied

-13-

on him for advice. See Arnold v. St. Louis Metropolitan Police Dept. Bd. Of Commissioners, No. 4:11-CV-1155 (CDP), Doc. #115-56, pp.8-9.

Much of the evidence of a conspiracy is contained in the statements Lorthridge made to IAD. She has not given testimony under oath in any proceedings. See Aug. 29, 2011 hearing at 5 [Doc. #106-4] (Lorthridge appeared at deposition and asserted Fifth Amendment privilege against self-incrimination). Defendant Isshawn-O'Quinn argues that Lorthridge's statements constitute inadmissible hearsay under Fed.R.Evid. 801. A statement offered against an opposing party is not hearsay if the statement "was made by the party's coconspirator during and in furtherance of the conspiracy." Rule 801(d)(2)(E). In order to satisfy the conspiracy exclusion, plaintiff must show, by a preponderance of the evidence, that a conspiracy existed between the declarant and the defendant and that the declarant made the statement in the course and in furtherance of the conspiracy. Smith v. Updegraff, 744 F.2d 1354, 1365 (8th Cir. 1984). Courts may conditionally allow evidence to be presented subject to later proof that the declarant was a co-conspirator and that the challenged statements were made in furtherance of the conspiracy. United States v. Spotted Elk, 548 F.3d 641, 661 (8th Cir. 2008). However, a party cannot rely on hearsay statements alone to establish the existence of a conspiracy. Rule 801(d)(2) ("the statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it."). Here, there is nonhearsay evidence that would support the existence of a conspiracy and the Court concludes that the evidence may be provisionally considered for the purposes of summary judgment.

To prove a § 1983 conspiracy claim, plaintiff must show: (1) defendants conspired to deprive her of a constitutional right; (2) at least one of the alleged co-

-14-

conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured her.  Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999).  Plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim.  White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008).  She is not required to show that each participant in the conspiracy knew "the exact limits of the illegal plan," but she must show "evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights."  Id. at 816 (quoting Larson v. Miller, 76 F.3d 1446, 1458 (8th Cir. 1996)).

> [T]he elements of a conspiracy are rarely established through means other than circumstantial evidence, and summary judgment is only warranted when "the evidence is so onesided as to leave no room for any reasonable difference of opinion as to how the case should be decided."  The court must be convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy.

Westborough Mall, Inc. v. City of Cape Girardeau, Mo., 693 F.2d 733, 743 (8th Cir. 1982) (quoting Admiral Theatre Corp. v. Douglas Theatre Corp., 585 F.2d 877, (8th Cir. 1978) (other citations omitted)).

Plaintiff has proffered evidence that she was subjected to false arrest in violation of the Fourth Amendment and thus has supported the first and second elements of her conspiracy claim.  In addition, the record contains evidence from which a jury could conclude that Arnold and Lorthridge conspired to subject her to a false arrest; that Lorthridge and Isshawn-O'Quinn conspired to conceal Arnold's role in the arrest; and that Harris conspired with Arnold to keep her informed of the course of the IAD investigation.

Defendant Isshawn-O'Quinn argues that an agreement to conceal prior misconduct by others does not amount to a conspiracy, citing Mettler v. Whitledge, 165

-15-

F.3d 1197, 1206 (8th Cir. 1999), as support for this position.  In Mettler, plaintiff's son was shot and killed in a confrontation with sheriff's deputies.  Plaintiff filed suit against the county, the sheriff, and the individual officers asserting, *inter alia*, a conspiracy claim, based on significant inadequacies in the post-arrest investigation.  The Eighth Circuit rejected plaintiff's conspiracy claim because she presented no evidence that the shortcomings in the investigation were intentional or that they arose from a conspiracy among the defendants.  Id.  Mettler is inapplicable here as there is some evidence of intentional conduct designed to conceal a violation of plaintiff's constitutional rights and an attempt to influence the outcome of the investigation.  A conspiracy claim can proceed on an allegation of a cover-up designed to deprive a plaintiff of a valid § 1983 claim.  See Comfort v. Pittsfield, 924 F. Supp. 1219, 1229 (D. Maine 1996) (summary judgment inappropriate on claim that chief conspired to conceal excessive force); Fitzpatrick v. Mendoza, 1991 WL 247623 at *3 (N.D. Ill. Nov. 6, 1991) (denying summary judgment on cover-up claim).

The Court concludes that plaintiff has presented evidence from which a jury could conclude that defendants conspired to deprive her of her constitutional rights.

### D.    Municipal Liability Claims

In Count II, plaintiff asserts that the defendant commissioners[7] are deliberately indifferent to the known problem of unlawful arrests and false reporting in the department.  In Count III, plaintiff alleges that the commissioners, along with defendants Isom, Filla, and Harris, failed to supervise and control Arnold, Lorthridge and Isshawn-O'Quinn.

_____

[7]The Board of Police Commissioners may be sued only by bringing an action against the individual commissioners in their official capacity. Best v. Schoemehl, 652 S.W.2d 740, 742 (Mo. Ct. App. 1983).

Plaintiff's claims against the commissioners are treated as claims against the municipality. See, e.g., Rohrbough v. Hall, No. 4:07CV996 ERW, 2008 WL 4722742, at *10 (E.D. Mo. Oct. 23, 2008) (evaluating claims against police commissioners as municipal liability claims). To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity. Moyle v. Anderson, 571 F.3d 814, 817 (8thCir. 2009) (citing Monell v. New York Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978)). There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. Id. (citation omitted). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. Speer v. City of Wynne, 276 F.3d 980, 986 (8th Cir. 2002) ("[S]ituations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation.").

To prove the existence of a municipal custom, plaintiff must show: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the SLMPD's employees; (2) deliberate indifference to or tacit authorization of such conduct by SLMPD's policymaking officials after notice of that misconduct; and (3) that the custom was the moving force behind the constitutional violation she suffered. Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). The standard for liability on a failure-to-supervise claim is deliberate indifference or tacit

-17-

authorization of the offensive acts. Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 673 (8th Cir. 2007).

A municipality may be liable under Monell when a plaintiff produces evidence of prior complaints sufficient to demonstrate that the municipality and its officials ignored police misconduct. Mettler, 165 F.3d at 1205. "Evidence that a police department has failed to investigate previous incidents similar to the incident in question may support a finding that a municipal custom exists, and that such a custom encourages or allows officers to [engage in unconstitutional conduct] without concern for punishment." Id. Plaintiff does not assert that the St. Louis police department fails to investigate police misconduct but, rather, that the commissioners have failed to take effective action in response to a known problem. She cites 23 instances of false reporting in the five-year period before her arrest in which SLMPD officers were found to have submitted false reports to conceal unlawful conduct, including planting evidence, committing perjury, drug dealing, accepting bribes and falsifying information in search warrants. See Pl. Ex. 1 (120 pages of newspaper articles) [Doc. #115-1 and -2].[8] Plaintiff asserts, and defendants do not contest, that the officers involved in these cases do not appear in IAD reports, suggesting that they were never investigated.

Plaintiff also submits the reports of 19 IAD investigations in which a charge of false reporting was sustained. [Doc. #115-3 through -9]. Defendants argue that the fact that so many investigations are conducted precludes liability. This argument is

---

[8]Defendants object to the Court's consideration of these articles because plaintiff failed to disclose them in compliance with Fed.R.Civ.P. 26(a)(1)(A). Plaintiff states that she gathered the articles in the process of preparing her response to the summary judgment motions. The Court concludes that the failure to disclose the articles at an earlier time was substantially justified. The articles were equally available to both sides and thus the failure to disclose is also harmless. See Rule 37(c)(1).

-18-

nonresponsive to plaintiff's claim that the commissioners do not properly exercise their oversight authority. For example, the commissioners are not informed about IAD investigations unless and until an officer appeals a decision. See Reggie Harris Dep. at 87-88 (board members have no knowledge of investigation details because they have to render a decision on the hearing board's discipline decision); Francis Slay Dep. at 60-61 ("[T]he department . . . wait[s] til there is a trial [to provide information] . . . so the police officer has an opportunity to give his or her side of the case. . . The objective is to give a fair hearing to the officer.") In addition to remaining ignorant of individual cases of alleged wrongdoing, there is evidence that commissioners are not informed even in summary form of the number and subject of IAD investigations. Rule 7.024 [Doc. #109-15] (annual report "shall be prepared . . . and submitted . . . to the Board"); Richard Gray Dep. at 16-21 [Doc. #115-11]; Michael Gerdine Dep. at 24-26 [Doc. #115-27]; Bettye Battle-Turner Dep. at 18 [Doc. #115-31]. In 2008, this court found that there is an "insulating barrier which prevents notice of complaints from reaching the [c]ommissioner [d]efendants." Rohrbough, 2008 WL 4722742 at *13. Plaintiff argues that defendants' failure to reform their practices amounts to deliberate indifference.

Plaintiff asserts that defendants Isom and Harris have a custom of withholding discipline for infractions. Although the rules provide that police officers may be placed on administrative suspension, without pay, upon "evidence of serious misconduct," id. § 7.013, it is the department's practice not to suspend officers for allegations of false reporting. Harris Dep. at 21-25; Daniel Isom Dep. at 34-37 [Doc. #109-16] (administrative suspension does not occur until investigation is completed or officer is indicted). Instead, officers are placed on administrative duty, a lower level of discipline

-19-

meant to keep officers off the street for a period of time.[9] Id. at 31. The commissioners were unaware that the practice regarding administrative suspension had been changed.

The Court finds that plaintiff has submitted evidence from which a reasonable jury could conclude that there is a widespread persistent pattern of unconstitutional conduct, that defendant commissioners are deliberately indifferent to or have tacitly approved such conduct, and that she sustained injury as a result. The same evidence would allow a jury reasonably to conclude that defendants Harris and Isom failed to supervise Arnold, Lorthridge and Isshawn-O'Quinn.

Plaintiff's claim against defendant Filla is based on her instruction to Captain Swiderski to file a formal complaint against Arnold. Swiderski testified that he believed an informal inquiry would obtain needed information from plaintiff and Lorthridge before Arnold received notice that she was under investigation. There is no evidence that Filla knew of Swiderski's concerns, or that she should have known that proceeding with a formal complaint would result in harm to the plaintiff. The Court will grant Filla summary judgment.

### E. Qualified Immunity

Isshawn-O'Quinn and Harris assert that they are entitled to qualified immunity on the individual capacity claims.[10] Qualified immunity shields a public official from liability when his conduct does not violate "clearly established statutory or

---

[9]At the time of this incident, Arnold was already on administrative duty pending the results of an IAD investigation into an earlier allegation of misconduct. Swiderski Dep. at 15-16 [Doc. 109-13].

[10]Defendants Isom and Filla also move for qualified immunity but they are named only in their official capacity.

constitutional rights of which a reasonable person would have known." El-Ghazzawy v. Berthiaume, 636 F.3d 452, 456 (8th Cir. 2011) (citing Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010)) (internal quotation and citation omitted).   The Court concludes that factual disputes regarding the extent to which defendants participated in the alleged conspiracy preclude qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Lathan Isshawn-O'Quinn for summary judgment [Doc. #104] is **granted** with respect to Count I of plaintiff's second amended complaint only.

**IT IS FURTHER ORDERED** that the motion of defendants Daniel Isom, Reggie Harris and the Board of Police Commissioners for summary judgment [Doc. #107] is **denied**.

**IT IS FURTHER ORDERED** that summary judgment will be entered in favor of defendant Antoinette Filla at the conclusion of this case.

**IT IS FURTHER ORDERED** that the motion of defendant Henrietta Arnold for summary judgment [Doc. #128] is **denied**.

**IT IS FURTHER ORDERED** that defendants' motion to strike exhibits [Doc. #135] is **denied**.

An order setting this matter for trial will be separately entered.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 17th day of August, 2012.